IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **Elton Breland,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. _____ |
| **Liberty Life Assurance Company of Boston,** | ) |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, the Plaintiff Elton Breland, and in support of his Complaint says as follows:

### Facts Common to All Counts

1.  The Plaintiff is a disabled individual who, at all relevant times to this Complaint, was employed as a maintenance technician at Resolute Forest Products, Inc., also known as AbitibiBowater Inc. or AbiBow US Inc., until he became unable to work in July 2010.

2.  While employed, the Plaintiff was a participant in the AbiBow US Long-Term Group Disability Income Program, which provided a Group Disability Income Policy, Policy Number GF3-820-090755-01 (the "Plan" or the "Policy"), which consisted of long term disability ("LTD") benefits. The Plan was underwritten and/or insured by Defendant Liberty Life Assurance Company of

Boston ("Liberty"). It is under this Plan that the Plaintiff is entitled to LTD benefits.

3. As part of the Plan, the Plaintiff is covered by the Class 3 group of benefits, which provides for 70% of "basic monthly earnings" should he become disabled, subject to a reduction by any "other income benefits" or "other income earnings".

4. AbiBow US Inc. is identified as the Plan Sponsor in Plan documents. However, Liberty is the Plan Administrator, Claims Administrator, designated agent of the Plan Administrator, and/or the *de facto* Plan Administrator for the Plan, and has been throughout the Plaintiff's LTD claim process. Liberty is a fiduciary under the Plan and is solely responsible for paying the LTD benefits due under the Plan, and for making benefits decisions related to the Plan.

5. The claim decisions regarding the Plaintiff's eligibility for LTD benefits under the Plan were made solely by employees of Liberty or by individuals who have been represented in correspondence to the Plaintiff as being employees and/or agents of Liberty.

6. Fiduciary responsibility for the production of requested Plan documents, claim guidelines and manuals, and claim file information, and the authority or discretion to provide such documents rested with Liberty, and in fact, most of these documents were solely in Liberty's possession.

7. The Plan defines "Disability" or "Disabled" for the first 24 months of payable LTD monthly benefits as follows:

> 1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
>     i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation;

8. After benefits have been payable for 24 months, the definition of "Disability" or "Disabled" changes and the employee is disabled if "ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."

9. The Plan defines "Own Occupation" as "the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy."

10. The Plan defines "Any Occupation" as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

11. Finally, the Plan defines "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own

Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

12. The Plaintiff became unable to perform the duties of his own occupation on or about July 20, 2010, due to a culmination of physical health problems. These health problems include late stage Lyme disease, polyarthralgias, myalgias, muscle weakness, hyper-reflexia, neuromuscular degenerative disorder, "stiff person syndrome", clonus, chronic fatigue syndrome, drowsiness, chronic migraine headaches, achilles' tendonitis and degeneration, neuropathy, memory loss, hypercholesterolemia, confusion and difficulty focusing, GERD, extreme hearing loss, decreased vision, episodes of vertigo and imbalance, tenderness in joints, right lateral epicondylitis, and generalized pain. These medical conditions are well-documented in the Plaintiff's medical records.

13. On September 26, 2012, the Social Security Administration found the Plaintiff to be completely disabled as of July 2010 due to several different physical health impairments, all of which relate to his LTD claim with Liberty.

14. Additionally, due to his health problems resulting in an inability to continue working, the Plaintiff filed a claim for LTD benefits under the Plan in or around December 2010.

15. By letter dated April 12, 2011 ("April denial letter"), Liberty denied the Plaintiff's LTD claim, unreasonably claiming that the Plaintiff was capable of

performing his own occupation. Liberty's April denial letter contained vague and overly broad conclusions that appeared to be simply copied and pasted from a form denial letter, as well as copied and pasted portions of physician consultant reports. There was no explanation given by Liberty as to how it reached its conclusions in light of the evidence.

16. In its April denial letter, Liberty based its initial decision to deny the Plaintiff's LTD benefits upon its own biased employee physician, Dr. David Peterson, who was not qualified to render an opinion as to the Plaintiff's medical conditions, as well as a biased psychiatrist, Dr. Marcus Goldman, who was employed through Behavioral Medical Interventions ("BMI").

17. Dr. Peterson's "clinical case review"/report clearly ignored many of the Plaintiff's documented diagnoses, ignored the restrictions, limitations and opinions given by the Plaintiff's treating physicians, and completely misconstrued and/or mischaracterized medical evidence in the file. Dr. Peterson broadly and unjustifiably concluded that "The medical records do not support impairments based on any medical diagnosis" without citing to any medical evidence in support of his opinion.

18. Furthermore, Liberty's use of Dr. Goldman, who is a psychiatrist, is highly suspect given that the Plaintiff's disabling conditions are based solely off of physical health problems and not mental health problems. The Plaintiff's original

claim form did not list any mental health problems as the cause of his disability. Liberty brought Dr. Goldman in to review the file in order to rubber-stamp its denial, knowing that Dr. Goldman would find no mental restrictions.

19. As previously mentioned, Liberty's initial decision to deny the Plaintiff's claim was tainted with conflict of interest. Dr. Peterson is an employee of Liberty, the entity who is also responsible for paying the benefits. Dr. Goldman is regularly used as a physician consultant by Liberty and other insurance companies to support a denial of long term disability claims. Dr. Goldman is employed by BMI, which services insurance companies for the purpose of rendering opinions favorable to their financial interests regardless of the severity of a claimant's condition.

20. After Dr. Peterson and Dr. Goldman issued their reports rife with unsupported medical conclusions, cherry-picking facts, and ignorance of the actual medical evidence, Liberty rubber-stamped these conclusions in the form of its April denial letter, even though the Plaintiff had restrictions and limitations reported by himself and his treating physicians that would prevent him from returning to his prior job.

21. By letter dated August 17, 2011, the Plaintiff submitted an appeal of Liberty's wrongful denial of LTD benefits, explaining why he could not perform his prior job and enclosing additional evidence related to his claim. As part of his

appeal, he submitted a letter from his primary treating physician, Dr. Messina, who indicated that he had reviewed the Plaintiff's job description and that the Plaintiff was not capable of performing his occupation.

22. In spite of the Plaintiff's appeal, by letter dated October 17, 2011 ("October denial letter"), Liberty denied the Plaintiff's appeal. Liberty based its appeal denial decision on the same erroneous and biased physician reports relied upon as the basis for its original denial. In fact, Liberty simply adopted the conclusions of its prior denial letter verbatim, again without explaining the rationale for its decision or why the Plaintiff's treating physicians' opinions were not supported.

23. Furthermore, Liberty presented no evidence in its October denial letter that it had even considered the duties of the Plaintiff's own occupation, or that the physicians it hired had considered these duties.

24. By letter dated February 11, 2013, the Plaintiff submitted a final demand and additional submission of information to Liberty outlining the reasons why its prior decisions were wrong and unreasonable. This submission included additional information gathered from his treating physicians reflecting that he is disabled from even sedentary employment; additional medical records reflecting the severity of his complaints, restrictions and limitations; a face-to-face interview with the Plaintiff and interviews with two of his former co-workers, all of which

supported that the Plaintiff is not capable of returning to work; and information from the Social Security Administration reflecting his inability to work.

25. The Plaintiff's final demand and additional submission letter also pointed out to Liberty, in detail, the blatant conflict of interest on the claim, and further noted the borderline fraudulent nature of the physician consultant reports utilized by Liberty to deny the claim, where the physicians ignored medical evidence supporting disability, contradicted their own statements in their reports, and failed to even address the treating physicians' findings, restrictions and limitations.

26. In response to the Plaintiff's February 11, 2013 letter, Liberty sent a letter to the Plaintiff dated March 6, 2013 indicating that it was refusing to consider the additional information presented by the Plaintiff and that no further review would be conducted, disagreeing with the Plaintiff's assertion that there was a continuing duty to review information related to the claim.

27. The Plaintiff is entitled to all relevant Plan documents, claim guidelines, and instruments relevant to his LTD claim and Liberty's claim decisions. At various times throughout the claim process, the Plaintiff has made written requests for relevant claim information and documents to Liberty.

28. On May 22, 2012, the Plaintiff made his first written request to Liberty for all relevant claim file documentation. Among the items specifically

requested were a complete copy of his claim file, the summary plan description, Liberty's claim manual, and any claim guidelines or protocols that were used or may have been referred to by Liberty in the claim. By letter dated May 29, 2012, Liberty responded to the Plaintiff's request for documents, but did not provide all of the information requested.

29. The Plaintiff submitted his second written request for documents to Liberty by letter dated June 25, 2012. This letter specifically requested Liberty's claim manuals, claim guidelines and internal protocols. By letter dated June 27, 2012, Liberty responded to the Plaintiff's request for documents and refused to provide the information requested by the Plaintiff.

30. The Plaintiff submitted his third written request for documents to Liberty by letter dated October 25, 2012. Again, this letter specifically requested Liberty's claim manuals, claim guidelines and internal protocols, and notified Liberty that a statutory penalty claim would be asserted if it did not provide the requested information. By letter dated October 30, 2012, Liberty responded to the Plaintiff's request for documents and again refused to provide the information requested by the Plaintiff.

31. The Plaintiff submitted his fourth written request for documents to Liberty by way of his February 11, 2013 final demand and additional submission letter. Similar to the Plaintiff's previous requests, this letter requested Liberty's

claim manuals, claim guidelines and internal protocols. However, it also requested certain claim file records such as attending physician statements that appeared to be missing from the record. The letter also attached an exhibit with 27 specific document requests. By letter dated March 6, 2013, Liberty responded to the Plaintiff's request for documents and again refused to provide the information requested by the Plaintiff.

32. Liberty has failed to conduct a full and fair review of the Plaintiff's long term disability claim and its decisions have been wrong, unreasonable and without any rational medical basis.

33. The medical records and claim record reflect that the Plaintiff has presented all needed documentation to Liberty, in accordance with the LTD Plan provisions, to establish and maintain a claim for LTD benefits.

34. Liberty has engaged in an arbitrary and capricious effort to deny the Plaintiff's LTD claim in order to relieve itself from paying LTD benefits.

35. Liberty has acted in an unfair and conflicted manner by ignoring substantial evidence that the Plaintiff is disabled under the LTD Plan, even though this information was presented on multiple occasions and in multiple forms.

36. Liberty has further acted in an unfair and conflicted manner by selectively reviewing and ignoring evidence in the claim file in a predetermined

effort to support a denial of LTD benefits rather than fairly evaluating the claim as a fiduciary is required to do.

37. Liberty has further acted in an unfair and conflicted manner by failing to abide by the clear terms of the LTD Plan.

38. Liberty has further acted in an unfair and conflicted manner by utilizing a biased physician consultant and a biased third-party company to review the LTD claim and support a denial of such claim, even in the face of clear conflicts of interest, and by utilizing its own staff physician to justify a denial of benefits.

39. Liberty has further acted in an unfair and conflicted manner by denying the Plaintiff's requests for certain documents that guided Liberty in its claim decisions, thereby preventing the Plaintiff from being able to ensure that Liberty performed a full and fair review of his file.

40. The Plaintiff remains unable to work in any type of full-time occupation with reasonable continuity, and has been placed in dire financial straits as a result of Liberty's denial of his LTD benefits claim.

41. The Plaintiff has exhausted all administrative or claim remedies under the Plan, or alternatively, exhaustion of further remedies would be futile.

42. All administrative or claim remedies as to a claim for statutory penalties have been exhausted.

## COUNT ONE

43. The Plaintiff hereby incorporates by reference all previous Paragraphs of this Complaint as if set out in full.

44. This Count is brought under 29 U.S.C. § 1132(a)(1)(B) and seeks to recover long term disability benefits, damages, and attorney's fees as may be recoverable under this code provision and 29 U.S.C. § 1132(g). The Plaintiff seeks to enforce his rights under the Plan in question. The Plan is an employee benefit plan that appears to be regulated by the Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. § 1001 *et seq.*

45. As set forth previously in this Complaint, Liberty wrongfully and unreasonably, and in violation of its obligations under ERISA, denied the Plaintiff's claim for long term disability benefits.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Liberty as follows:

    a. For the sum of all past due long term disability benefits;

    b. For reinstatement of the Plaintiff's claim to disability benefits under the Plan;

    c. For an award of attorney's fees and expenses;

    d. For interest on all past due benefits;

e. For such other further or different relief as may be just and proper under 29 U.S.C. § 1132(a)(1)(B).

## COUNT TWO

46. The Plaintiff hereby incorporates by reference all previous Paragraphs of this Complaint as if set out in full.

47. The Plaintiff seeks penalties under 29 U.S.C. § 1132(c) for wrongful refusal to provide information requested and as required by ERISA and relevant regulations.

48. Liberty has an obligation as a fiduciary and as an entity assuming the duties of Plan administrator, an agent of the Plan Administrator or Plan Sponsor, and/or as the *de facto* administrator to comply with requests for information, which it was required by law to furnish to the Plaintiff under 29 U.S.C. § 1132(c).

49. Under 29 U.S.C. § 1029, the Secretary of Labor prescribes what documents must be furnished. Under 29 C.F.R. § 2560.503-1, the participant is entitled to have reasonable access to all information relevant to a claim for benefits.

50. As previously set forth, the Plaintiff has repeatedly requested from Liberty, in writing, any information that was submitted, considered, generated, or relied upon in making the benefit determinations; a complete copy of the claim file; any information that constitutes an instrument of the plan or policy, statement

of policy or guidance with respect to the plan or decision-making process; and Liberty's claim manuals and other claim guidelines that may have been referred to by Liberty.

51. This information is known to Liberty and is believed to be in the possession of Liberty. Liberty, in failing to provide these documents, was acting as the Plan Administrator and/or as the *de facto* Plan Administrator, and was further acting as a fiduciary of the Plan.

52. These documents and information are needed by the Plaintiff to both understand how the Plaintiff's claim was handled, to ensure that Liberty correctly followed any applicable claim guidelines, and to ensure that the Plaintiff could address any seemingly adverse information in his claim.

53. Liberty has refused and/or failed to produce all of the information requested and its actions in failing to provide the requested documents constitute a breach of its fiduciary duties and further constitute a violation of ERISA § 502(c) subjecting Liberty to penalties in an amount up to $110.00 per day for each violation.

**WHEREFORE**, the Plaintiff demands judgment against Defendant Liberty as follows:

    a. For an award of penalties of $110.00 per day, per violation, for each day it failed to produce relevant "plan documents" and/or failed to

produce a complete copy of the claim file as required to be produced by 29 U.S.C. § 1024(b)(4) and as interpreted by the Department of Labor in Advisory Opinion 96-14A (July 31, 1996), and running until such time as this Court concludes that it has complied with its obligations;

b. For an award of attorney's fees and expenses;

c. For such other further relief as may be just and proper under 29 U.S.C. § 1132(c).

Respectfully Submitted,

Jason E. Burgett
(ASB-5742-A40B)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
Jasonburgett@erisacase.com

## Request for Service by Certified Mail

The Plaintiff requests service of this Complaint on the Defendant by certified mail, restricted delivery, return receipt requested.

_____
Jason E. Burgett
(ASB-5742-A40B)

**Plaintiff's Address:**

Elton Breland
c/o The Martin Law Group, LLC
P.O. Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Insurance Company
CSC Lawyers Incorporating Service Inc., Agent for Service of Process
150 South Perry Street
Montgomery, AL 36104

**To be served regarding the statutory penalty claim:**

Secretary of Labor
c/o Seth D. Harris
200 Constitution Avenue N.W.
Washington, D.C. 20210

Secretary of Treasury
c/o Jacob J. Lew
1500 Pennsylvania Avenue N.W.
Washington, D.C. 20220